ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Telephone: (212) 682-4940
Facsimile: (212) 682-4942
Allen G. Kadish
Email:  akadish@archerlaw.com

*Special Litigation Counsel for*
*Robert L. Geltzer, Chapter 7 Trustee, Plaintiff*

-------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| MUNDO LATINO MARKET INC., | Case No. 16-11349 (SMB) |
| Debtor. | |

-------------------------------------------------------------x

| | |
|---|---|
| ROBERT L. GELTZER, as<br>Chapter 7 Trustee of<br>Mundo Latino Market Inc., | Adv. Pro. No. 18-01013 (SMB) |
| Plaintiff, | |
| v. | |
| KATHRYN L. BEDKE, | |
| Defendant. | |

-------------------------------------------------------------x

## AMENDED COMPLAINT

ROBERT L. GELTZER, solely as Chapter 7 trustee (the "**Trustee**" or "**Plaintiff**") of the estate of MUNDO LATINO MARKET INC. (the "**Debtor**"), by and through his undersigned special litigation counsel, Archer & Greiner, P.C., as and for his complaint (the "**Complaint**") against KATHRYN L. BEDKE ("**Bedke**" or the "**Defendant**"), respectfully alleges as follows:

## NATURE OF THIS ACTION

1. This Complaint asserts claims of breach of duty, corporate waste and negligence against the Defendant.

2. Pursuant to, *inter alia*, Sections 323, 541 and 704 of the United States Bankruptcy Code (the "**Bankruptcy Code**"), Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Sections 715, 717 and 720 of the New York Business Corporation Law (the "**NYBCL**"), and applicable common law, the Trustee sets forth the causes of action asserted herein for acts and omissions of the Defendant that caused harm to the Debtor, its creditors and estate.

## JURISDICTION AND VENUE

4. This Court (as defined below) has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.

5. This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O).

6. By virtue of 28 U.S.C. § 157(b) and the standing order of reference of bankruptcy matters in this district, this adversary proceeding is automatically referred to this Court. The Trustee consents to entry of final judgment herein.

7. Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

## PARTIES

8. The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 11, 2016.

2

9. On September 16, 2016 (the "**Conversion Date**"), the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered an order converting the Debtor's Chapter 11 case to a case under Chapter 7.

10. The Trustee was appointed as the interim Chapter 7 trustee of the Debtor, accepted his appointment, duly qualified and is acting as the Trustee.

11. The Trustee is the Plaintiff in this action, and brings this action, not individually, but solely in his capacity as Trustee.

12. The Trustee is a citizen and resident of the State of New York with an office in the borough of Manhattan in the City of New York.

13. The Debtor was formed as a New York corporation.

14. The Debtor operated a retail food and household supply market in Upper Manhattan, located at 1272-1278 St. Nicholas Avenue, also known as 590 West 174th Street, New York, New York 10033 (the "**Premises**").

15. On or before the Conversion Date, the Debtor ceased operations.

16. As of the Conversion Date, the contents of the Premises, including inventory, computers and books and records, had been substantially emptied.

17. Any rights of the Debtor to a retail lease to the Premises were terminated prior to the Conversion Date and there is no surviving right to assume and assign the lease thereto.

18. Upon information and belief, a new business, unrelated to the Trustee or the Debtor's estate, operates in the Premises formerly occupied by the Debtor.

19. Defendant Bedke is an individual who resides in the borough of Manhattan in the City of New York.

20.     Bedke is the majority owner, a director and officer, and one of the two former principals, of the Debtor.

## BACKGROUND

**Formation and Funding of the Debtor**

21.     Upon information and belief, Bedke and Kathryn N. Holler ("**Holler**")[1] were the sole shareholders, principals, directors and officers of the Debtor.

22.     Holler was, as is referred to in certain documents, president and treasurer of the Debtor, and Bedke was, as is referred to in certain documents, vice president and secretary of the Debtor.

23.     Bedke invested over $1 million to capitalize and maintain the Debtor.

24.     Holler invested over $100,000 to capitalize and maintain the Debtor.

25.     Bedke was 70% owner, and Holler was 30% owner, of the shares of the Debtor.

26.     Bedke worked or works as a practicing attorney in New York.

27.     In or about 2014, Bedke funded and/or undertook the acquisition and opening of the operations of the Debtor.

---

[1] In accordance with an order of this Court, secured by the Trustee, Holler submitted to an examination under Bankruptcy Rule 2004. On or about May 9, 2017, Holler filed Chapter 11 Case No. 17-19532-JKS, in the United States Bankruptcy Court for the District of New Jersey. Thus, Holler is not a defendant herein. As majority shareholder and principal, Bedke bears the overwhelming (if not sole) responsibility and liability for the acts and omissions complained of herein.

4

**The Lease**

28.    Bedke caused the Debtor to enter into a lease for the Premises for operation of the Debtor's business commencing in or about February 2014. Bedke served as a guarantor under the lease.

**Rodriguez**

29.    Bedke was acquainted with Giovanni Rodriguez ("**Rodriguez**").[2]

30.    In or about late 2013 or early 2014, Bedke caused Rodriguez to start and operate the Debtor on her behalf.

31.    Bedke authorized Rodriguez to, among other things: (i) oversee the initial build-out and improvements to the space, (ii) outfit the space for operation as a retail market, including with shelving, machinery and computer equipment, (iii) purchase inventory, including food and household items, (iv) hire, train and supervise workers, and (v) conduct the daily operations of the Debtor.

32.    Rodriguez had no financial investment in the Debtor.

33.    Rodriguez opened the business of the Debtor, including conducting build-out, acquiring machinery and equipment, opening bank accounts, credit card and vendor accounts, hiring employees, retaining professionals, and registering with the state.

**Operation of the Debtor**

34.    In or about late 2014 or early 2015, the Debtor opened for business.

---

[2] In accordance with an order of this Court, secured by the Trustee, Rodriguez submitted to an examination under Bankruptcy Rule 2004. On or about April 10, 2017, Rodriguez filed Chapter 7 Case No. 17-10960-SHL, in the Court. On July 20, 2017, the Court entered a final decree, granted a discharge and closed Rodriguez's case. Thus, Rodriguez is not a defendant herein.

5

35. During the time of the operations of the Debtor, Bedke had a full-time or other career or employment.

36. Bedke did not operate, or locate herself, at the premises of the Debtor.

37. Bedke deferred virtually all operations and management to Rodriguez and provided limited, if any, oversight over operations and reporting.

38. Upon information and belief, the initial funding of the Debtor was intended to last long enough to open and then support its operations. However, such funding was not sufficient for construction and initial outfitting to be completed, the costs of which exceeded the funding made available by Bedke or others.

39. The Debtor purchased and possessed a computer system consisting of point-of-service record-keeping cash registers and a networked computer system (collectively, the "**System**") that was capable of maintaining and providing purchasing and sales activities and substantially all other record keeping necessary to operate the business. The cash registers at the check-out counters were to be connected as part of the System as was a computer terminal in the office maintained at the Debtor's premises. The System was to be manipulated at the Debtor's premises every day, including by point-of-sale at the cash registers, and in the office, such as by entry of receipts and disbursements. The System also was to provide real-time, daily, weekly, monthly and other periodic reporting. The System was remotely, electronically accessible so that Bedke and Holler could use it. Upon information and belief, Bedke was to have used the System to supervise the activity of the Debtor and check reports on purchasing, sales, expenses, payroll and sales tax activity, but she failed to do so.

**Misconduct**

40. Bedke failed to install, or impose and achieve the installation and use of, the System, and Rodriguez's use of the System or any other system to maintain books and records and business activity of the Debtor.

41. Bedke abdicated her responsibility for and oversight of the Debtor by failing to supervise Rodriguez in, among other things, the following:

   a. Placing and receiving merchandise orders, which she abdicated in favor of Rodriguez.

   b. Making vendor payments, substantially with cash or checks.

   c. Allowing Rodriguez to sign checks, which Rodriguez did, even though he was not an authorized signatory.

   d. Making payroll payments for the Debtor, which she abdicated to Rodriguez.

   e. Abandoning an ADP payroll system in favor of no formal payroll system, which she abdicated to Rodriguez.

   f. Allowing Rodriguez to make payroll payments to himself and other workers "off the books."

   g. Allowing Rodriguez to borrow sums of money for operations of the Debtor or otherwise, from the Debtor, Bedke or other parties, on multiple occasions, without interest or expectation of repayment.

   h. Permitting Rodriguez to buy, and he bought himself, accessories and electronics, including an Apple laptop computer, as he saw fit out of money that belonged to or was intended for use by the Debtor in the market.

   i. Permitting Rodriguez to open, and he opened, lines of credit and borrowed money from individuals, vendors, credit card accounts and hard money lenders in the name of the Debtor to support operations and/or for other non-Debtor-related uses.

j. Permitting Rodriguez to operate the Debtor independently of and without Bedke's oversight or supervision.

k. Failing to assert control over, and failing to supervise, the Debtor's including the books and records of the Debtor, and by taking no steps to improve their control over or access to the Debtor including the books and records of the Debtor.

l. Failing to achieve installation and implementation of the System to monitor transactions.

m. Exercising no, or insufficient, control or oversight over the day-to-day activities of the Debtor.

n. Exercising no, or insufficient, control or oversight over the payroll activities of the Debtor.

o. Exercising no, or insufficient, control or oversight over tax activities of the Debtor.

p. Exercising no, or insufficient, control or oversight over the payment of rent and compliance with the Debtor's lease.

q. Exercising no, or insufficient, control or oversight over the maintenance and functioning of the System to maintain books and records of the Debtor.

42. The Debtor sustained financial losses for the entire period of its operation. For instance, the Debtor reported a loss of $305,752 in its Statement of Financial Affairs and for its first year of operation, 2014, in its 2014 federal tax return.[3]

43. Bedke exercised no, or insufficient, control or oversight over the Debtor such that Rodriguez reportedly entered into unauthorized contracts and lines of credit, paid himself as he saw fit, borrowed money from the Debtor without repayment, failed to report adequately to Bedke, and failed to maintain the Debtor's System, or other adequate books and records.

---

[3] The Trustee demanded the Debtor's books and records but was informed that no 2015 or later tax returns were prepared for the Debtor.

8

**Inadequate Books and Records**

44. The Trustee demanded the turnover of all the Debtor's books and records.

45. The Debtor failed to produce substantial or material operational reporting or general books and records of account of the Debtor to the Trustee.

46. The Trustee obtained a Bankruptcy Rule 2004 order of this Court. In violation of the Bankruptcy Rule 2004 order, the Debtor, Bedke, Holler and Rodriguez failed to produce substantial or material books and records of the Debtor's operations.

**Claims**

47. According to the schedules and other documents filed in this case, the Debtor's unsecured creditors allegedly are owed in excess of $1,031,589.97. After the deadline set by the Court as the last day to file claims in this case, an aggregate of $1,139,728.89 in claims were filed.

**Disallowance of Claims of Defendant**

48. For the reasons set forth below, judgment on the claims of the Trustee as Plaintiff should be granted as demanded, and any claims asserted or to be asserted by or on behalf of the Defendant in this Chapter 7 case should be disallowed.

### FIRST CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

49. The Trustee re-states and re-alleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 48 of this Complaint.

50. At all times relevant herein, Bedke was the majority shareholder, principal, officer and director of the Debtor.

9

51. Pursuant to NYBCL § 715:

> An officer shall perform his duties as an officer in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.

52. At all times relevant herein, Bedke had the obligation to discharge her duties as an officer of the Debtor in good faith and with the care of an ordinarily prudent person in a like position under similar circumstances.

53. Pursuant to NYBCL § 717:

> A director shall perform his duties as a director . . . in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.

54. At all times relevant herein, Bedke had the obligation to discharge her duties as a director of the Debtor in good faith and with the care of an ordinarily prudent person in a like position under similar circumstances.

55. Pursuant to NYBCL § 720:

> (a) An action may be brought against one or more directors or officers of a corporation to procure a judgment for the following relief:
>
> > (1) Subject to any provision of the certificate of incorporation authorized pursuant to paragraph (b) of section 402, to compel the defendant to account for his official conduct in the following cases:
> >
> > > (A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.
> > >
> > > (B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.

10

> (b) An action may be brought for the relief provided in this section, and in paragraph (a) of section 719 (liability of directors in certain cases) by a corporation, or a receiver, trustee in bankruptcy, officer, director or judgment creditor thereof, or, under section 626 (shareholders' derivative action brought in the right of the corporation to procure a judgment in its favor), by a shareholder, voting trust certificate holder, or the owner of a beneficial interest in shares thereof.
>
> (c) This section shall not affect any liability otherwise imposed by law upon any director or officer.

56. Directors and officers have corporate fiduciary duties including the duties of care, loyalty and good faith in the execution of their service as such.

57. At all times relevant herein, Bedke had the obligation to discharge her duties of care, loyalty and good faith to the Debtor.

58. Bedke breached her duties as a director and/or officer of the Debtor.

59. Bedke failed to supervise and exercise her responsibility and authority over the activities, operations and reporting of the Debtor.

60. Bedke failed to assure that the Debtor had proper budget and fiscal controls.

61. Bedke failed to maintain and ensure that the Debtor maintained proper books and records.

62. Bedke mismanaged the Debtor's finances and caused the Debtor to operate in a status of insolvency.

63. Bedke failed to oversee the Debtor's employees and agents.

64. Bedke enabled the Debtor to be subject to theft and mismanagement by employees and agents.

65. Bedke permitted Rodriguez to pay himself and purchase for his personal use items paid by the Debtor.

66. Bedke did not require Rodriguez to re-pay timely personal loans owed by Rodriguez to the Debtor and caused harm to the Debtor by not requiring that interest be paid.

67. Bedke failed to capitalize the Debtor adequately in respect of construction and outfitting costs and failed to take, or delayed taking, actions to secure additional funding, or reduce or manage other expenses resulting in damages to the Debtor and its creditors.

68. Bedke failed to ensure that the Debtor complied with applicable laws and regulations.

69. Bedke neglected, or failed to perform, her duties with respect to management and disposition of the corporate assets in her charge as set forth herein.

70. Bedke's conduct or misconduct resulted in was of the Debtor's corporate assets.

71. Bedke's commissions and omissions as set forth herein constitute breaches of the duties described herein.

72. Bedke's breaches of duties resulted in damages to the Debtor's estate and creditors.

73. Accordingly, Bedke is liable to the Debtor's estate in an amount to be determined at trial but at least in the amount of $1,139,728.89 or such other sum as represents not less than the value of all allowed claims plus administrative expenses as may be allowed herein.

## SECOND CLAIM FOR RELIEF

### (Corporate Waste)

74. The Trustee re-states and re-alleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 73 of this Complaint.

75. Bedke had the duty to the Debtor to preserve and protect its assets from undue waste or loss and to maximize its long-term financial health.

76. By virtue of her acts and omissions as stated herein, Bedke committed waste of the Debtor's corporate assets and is required to account therefor.

77. Bedke's breaches of duties and failures described herein resulted in damages to the Debtor's estate and creditors.

78. Accordingly, Bedke is liable to the Debtor's estate in an amount to be determined at trial but at least in the amount of $1,139,728.89 or such other sum as represents not less than the value of all allowed claims plus administrative expenses as may be allowed herein.

## THIRD CLAIM FOR RELIEF

### (Negligence)

79. The Trustee re-states and re-alleges, as if fully set forth herein, the allegations set forth in paragraphs 1 through 78 of this Complaint.

80. By virtue of her negligence as stated herein, Bedke failed in the exercise of her functions and duties as shareholder, principal, director, and officer of the Debtor.

81. Bedke's negligence resulted in actual damages to the Debtor's estate and creditors.

82. Accordingly, Bedke is liable to the Debtor's estate in an amount to be determined at trial but at least in the amount of $1,139,728.89 or such other sum as represents not less than the value of all allowed claims plus administrative expenses as may be allowed herein.

## **DEMAND**

WHEREFORE, the Trustee demands judgment against the Defendant, in his favor on behalf of the Debtor's estate, at least in the amount of $1,139,728.89 or such other sum as represents no less than the value of all allowed claims plus administration expenses as may be allowed herein, as follows:

   i. Awarding damages against the Defendant on the FIRST claim for relief;

  ii. Awarding damages against the Defendant on the SECOND claim for relief;

 iii. Awarding damages against the Defendant on the THIRD claim for relief;

  iv. Disallowing any claims of the Defendant in this Chapter 7 case;

   v. Awarding interest as appropriate;

  vi. Awarding costs and disbursements of this action; and

 vii. Granting such other and further relief as this Court may deem just and proper.

| | |
|---|---|
| Dated: New York, New York<br>April 10, 2018 | ARCHER & GREINER, P.C.<br><br>By:  s/ Allen G. Kadish  <br>      Allen G. Kadish<br>630 Third Avenue<br>New York, New York 10017<br>Telephone: (212) 682-4940<br>Facsimile: (212) 682-4942<br>Email:  akadish@archerlaw.com<br><br>*Special Litigation Counsel for Robert L. Geltzer, Chapter 7 Trustee, Plaintiff* |